(45 South. 401.)

No. 16,609.

WOODFOLK'S HEIRS v. WITKOWSKI
et al.

(Jan. 9, 1908.)

TAXATION—TAX TITLE—ACTION TO SET ASIDE —LACHES.

The present is a petitory action by which plaintiffs seek to be decreed the owners of the Ashton plantation, in East Carroll parish, fronting on the Mississippi river near the Arkansas line. Plaintiffs in their petition refer to certain tax sales under which the property has been sold, and to certain judicial proceedings to which the holders of the parties holding the legal title had recourse to confirm their title, as being radical nullities. Plaintiffs' demand is rejected, and defendants' title recognized. The property was sold at tax sale as far back as 1873. Plaintiffs' father had anterior to that time left the property for which he was heavily indebted and gone to Mississippi to reside. He resided in Mississippi until his death, and his heirs have never returned to Louisiana. Neither plaintiffs' father nor they themselves have paid, nor offered to pay, a dollar of taxes on the property at any time later than 1869. They obviously abandoned it. In the meantime the tax purchasers have transformed the property from a wilderness into a plantation in cultivation, with extensive improvements upon it. Plaintiffs' demand, for reasons assigned, is without equity or law to support it.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 45, Taxation, § 1564.]

(Syllabus by the Court.)

Appeal from Ninth Judicial District Court, Parish of East Carroll; Francis Xavier Ransdell, Judge.

Action by the heirs of W. W. Woodfolk against Adolph Witkowski and others. Judgment for defendants, and plaintiffs appeal. Affirmed.

Charles Samuel Wyly (James S. Pilcher, of counsel), for appellants. Davis & Browne and Joseph Medicus Kennedy, for appellees.

NICHOLLS, J. The present is a petitory action by plaintiffs against the defendants, in which they pray to be recognized as the owners of the Ashton plantation, in the parish of East Carroll, and condemning defendants to deliver possession of the same, with rents and revenues.

Incidental to the petitory action plaintiffs allege the radical nullity of certain tax proceedings and sales under which defendants claim, and certain judicial proceedings through which they claim. Defendants attempted to quiet their asserted tax titles.

In their petition they allege: That they are the owners of the property by inheritance from their father, W. W. Woodfolk, who was the owner and possessor thereof up to the time of his death in 1880. That from the

year 1873 to 1885 the property owing to the Ashton and other crevasses was not susceptible of cultivation, and could not be corporeally occupied. That their ancestor from the year 1865 to the time of his death was continuously a nonresident, was absent from the state, and had no agent therein.

That in October, 1873, the tax collector attempted to sell the property for purported delinquent taxes of W. W. Woodfolk for the years 1860, 1870, and 1871 to one Conley E. Campbell, of New York, for the pretended sum of $1,111.76, stated to be delinquent taxes, damages, costs, and charges, but composed of pretended damages not authorized by any law to be imposed, and of illegal, excessive taxes, costs, and charges. That said proceedings were null and void for nullities patent on the face of the pretended tax deed and of said void proceedings. That same were wholly ex parte as to their said ancestor. That said Campbell never took possession of said property, nor claimed any ownership thereof, and never paid any taxes thereon.

They allege that in 1884 the tax collector, under a pretended assessment to E. C. Campbell (Charles Nash, agent), wherein the property is described as "1,800 acres fronting on Miss. one mile, and running back between parallel lines three miles, bounded on the north by the Arkansas line," purported to sell said property to Simon Witkowski, reciting in the tax deed that said property was seised, advertised, and sold for the unpaid taxes due by Mrs. E. C. Campbell for the year 1883, the said Simon Witkowski well knowing at the time that Conley E. Campbell had been dead for several years prior to said pretended assessment, and that his widow's name was not E. C. Campbell, but Harriet A. Campbell, and that said pretended tax sale was null and void by reason of nullities patent on the face of said deed and proceedings, and that no notices thereof were given; that Charles Nash, representing himself as the agent of Mrs. Harriet A. Campbell, falsely pretending to be administratrix of the estate of Conley E. Campbell, pretended to sell an undivided half of said property to Adeliza V. Witkowski, wife of Simon Witkowski, acting as his wife's agent in 1883, whereas, Nash was not authorized to act for said Mrs. Campbell individually or as administratrix, and said Mrs. Campbell was not administratrix of Conley E. Campbell's succession, nor authorized in any way to represent said succession or to sell any property that might belong to it, to the knowledge of the Witkowskies.

They allege that Simon Witkowski and his wife lodged their pretended title to said property in the names of different members of their family, to wit, their daughters, Eugenia and Josephine, their son-in-law, Semple, and their sons, L. L. and Adolph, Simon Witkowski, all the time holding powers of attorneys from each of said parties, he and his wife being insolvent and unable to hold title in their own names, and all of their children and son-in-law being without means and unable to pay the pretended prices set out in the respective purported conveyances, all of which were simulated.

They allege that Simon Witkowski, pretending to act for some of said interposed parties, about the last of the year 1902, took possession of said property in bad faith, and so holds same, receiving the rents and revenues; that the pretended title is now lodged in Adolph Witkowski, son of Simon Witkowski, who claims to be the general, special, and unlimited agent of his son, the latter being a young man wholly without means and residing at Denver, and being solely a party interposed to hold title for his said father.

Plaintiffs allege that in proceedings styled Adolph Witkowski v. L. L. Witkowski et al., No. 501, on the docket of the district court of East Carroll, Adolph Witkowski and Simon Witkowski, knowing they had no title to said property, attempted to cure and quiet their

pretended tax titles to said property under article 233 of the Constitution and Act 101, p. 127, of 1898; but that said proceedings, wherein L. L. Witkowski, Mrs. Josephine Witkowski (Widow Bradley), W. W. Woodfolk, and Mrs. E. C. Campbell are named as defendants, were wholly ex parte as to plaintiffs, as to their ancestor's succession, as to the succession of Conley E. Campbell, and as to Mrs. Harriet A. Campbell, and are in no manner binding on them; that their ancestor had been dead for years before said void proceedings were had, and that his succession and heirs were not made parties thereto, either directly or indirectly; that plaintiffs had no knowledge and received no notice whatever of same; that therein Adolph Witkowski attempted to make W. W. Woodfolk (long since dead) and Mrs. H. A. Campbell (styled therein "Mrs. E. C. Campbell") parties thereto by the appointment of S. B. Kennedy, Esq., as curator ad hoc for them, but they show that said Kennedy was never personally cited, never accepted the appointment as curator ad hoc, never appeared in said suit, and never notified plaintiffs or Mrs. Harriet A. Campbell of the pretended proceedings; that it was incompetent and illegal for the same attorney to represent and defend the interests of the succession of W. W. Woodfolk, and at the same time represent and defend the interests of Mrs. Campbell as their respective interests conflicted, and that said appointment was illegal, null, and void; that the pretended judgment by default is absolutely null and void, the real parties in interest not being parties thereto; and that the nullity of said pretended judgment should be decreed.

Defendant Adolph Witkowski, for answer, pleaded a general denial. He averred that he was the owner of said property by virtue of conveyances regular in form and extending from himself back through the said W. W. Woodfolk, deceased, to the United States, which conveyances he set out; that all of the deeds, sales, and conveyances were legal and valid, and vested title in him.

He further pleaded: The prescription of three years under Act No. 105, p. 154, of the Acts of 1874, and the prescription of five years, and pleaded the proceedings and judgments in the monition suit of Eugenia Witkowski and James Semple v. All Whom It May Concern, being No. 1036 on the docket of the eighth district court for said parish, and in the suit No. 501, styled Adolph Witkowski v. L. L. Witkowski et al., on the docket of said court.

That the said W. W. Woodfolk abandoned said property about 1862, and had paid no taxes on it since. That he owed debts in 1866 amounting to about $300,000, and that his creditors sued and obtained judgments on their claims, which were never paid. That the vendor's mortgage on the said Ashton plantation was reinscribed and kept alive up to 1879, and that said Woodfolk and his heirs actively abandoned said place, as it was incumbered for many times its worth.

Averring himself and his authors to have held and acquired said property in good faith and by just titles, and that they had been in corporeal possession since the 22d day of October, 1873, he pleaded the prescription of 10 years acquirendi causa.

He further alleged that he and his authors acquired and held said property in good faith. In the event he was decreed to be without title, he was entitled to be maintained in possession until he was reimbursed for the taxes paid by them, amounting to $4,276, with interest to be added, and the expense of clearing and improving said lands, $15,418 additional.

By agreement of counsel, in order to facilitate the trial of this cause, all questions of rents, revenues, improvements, and taxes were deferred until the trial of the question of ownership, and no evidence on such matters is to be considered except so far as it bears on the question of title.

On the trial of the case there was judgment in favor of defendant, and plaintiffs have appealed.

The first tax sale shown by this record was made in 1873 by Anderson, tax collector. The property unquestionably belonged at that time to W. W. Woodfolk, the father of the plaintiffs. The correctness of the assessment made in his name on the property for the taxes for which the sale was made is not contested. The tax debtor was then absent from Louisiana, he having left the state a number of years before, without leaving any one to represent his interests in the state. That condition of things continued up to the period of his death in 18——. His heirs in Mississippi (as he himself had done) remained inactive in respect to this property up to the bringing of this petitory action in 1901. During this whole period they neither paid nor offered to pay one dollar of taxes upon the property, and they make no such offer yet. When Mr. Woodfolk left Louisiana, the property was very heavily mortgaged and effected with a vendor's privilege to secure a very large portion of the purchase price due by him. In consequence of the pendency of the Civil War at that time, the plantations fronting on the Mississippi river, in the parish of Carroll (as this particular plantation did), became subject to constant overflows by reason of the necessary neglect of their levees. Values from that and other causes ran down so greatly that persons owing for them had little motive for attempting to pay off the debt upon them, or to care for them in any way. The father of the plaintiffs and they themselves evidently believed that they had no interest in seeking to continue to preserve their ownership of the same. They neglected and substantially abandoned it. In the meantime the property passed into the hands of other parties, who, by their exertions, have converted it from a wilderness of willow trees into a tract of land in cultivation, with expensive improvements upon it. Plaintiffs' concern in this property has suddenly revived, and they now urge that they have been much aggrieved by absolutely null proceedings carried out in bad faith through successive tax sales and simulated conveyances made by Simon Witkowski to different members of his family. We direct our attention at once to the original tax sale made in 1873, at which Conley E. Campbell became the adjudicatee, for, if by that sale Woodfolk was divested of his ownership and possession, it is a matter of no concern to the plaintiffs how many simulated acts (if any) have been executed since by the Witkowskies, or how fraudulent their conduct may be (if such it was) in reference to persons other than themselves.

Plaintiffs urge that the recitals of Anderson, tax collector, in his tax deed of 1873 to Campbell, were sweeping conclusions of fact and of law, which carried with them no probative force. His recitals should have been more specific than they were as to the particular formalities followed by himself, but under decisions of this court the failure to make specific relation of facts does not result in absolute nullity in the tax deed. Under the law the tax deed is prima facie legal, and when 20 years and more pass without attack from any quarter, and time (as said in Pickett v. Athletic Club, 47 La. Ann. 1608, 18 South. 634) has obliterated the means of verifying transactions, that fact of itself and independently of statute deepens the presumption. It has been held that after 20 years a probate sale will not be annulled, because the record shows no appointment of an attorney to absent heirs, nor citation before the decree of any one representing them (Hennen's Digest, p. 578, No. 20; Gibson v. Foster, 2 La. Ann. 503; Fontenot v. Husband, 2 La. Ann. 780); also that after 20 years all parties interested (it will be presumed) had due notice of the proceedings of a court acting

within its jurisdiction. Hennen's Digest, p. 489; Gibson v. Foster, 2 La. Ann. 503; Gentile v. Foley, 3 La. Ann. 146.

Plaintiffs have delayed so long attacking the tax sale of 1873 that it would be inequitable to apply in their favor the maxim, "De non apparentibus." The maxim applicable to this case is "Omnia præsumuntur rite." That maxim has been held to apply to tax sales. Corkran Oil Co. v. Arnaudet, 111 La. 584, 35 South. 747; Willis v. Cypress Co., 108 La. 255, 32 South. 386.

We have no reason to believe that as a matter of fact Woodfolk was not represented by a curator ad hoc. The reference to Nash as curator ad hoc in the act which recorded the seizure of the property indicates that a curator ad hoc had in reality been appointed. The fact that Woodfolk was an absentee, and that the situation was such as to have required such an appointment, did not appear in the tax deed to Campbell, and he was not required under the law, in order to have been in good faith, to have examined the proceedings for the purpose of ascertaining what the actual facts were. Heirs of Jopling v. Chachere, 107 La. 534, 32 South. 243.

Plaintiffs urge that the property was seized and sold not only for the taxes due on the property, but for damages and penalties. The deed states that it was sold for the delinquent taxes. After it was sold the price was applied as far as it went to payment of tax penalties. If there was any misapplication of the price, that fact did not affect the sale. Plaintiffs' remedy on that score was not to set the sale aside. As matters are disclosed in the record, we do not think that defendant was required to support his title by invoking prescription. Had that plea been necessary for the purposes of this case, we think it would have been properly invoked and sustained.

We think the judgment appealed from correct, and it is hereby affirmed.